# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

RONALD ROBINSON,

Plaintiff,

v.                                          5:19-CV-406
                                            (MAD/ATB)

JOHN HALLETT, et al.,

Defendants.

RONALD ROBINSON, Plaintiff, pro se

ANDREW T. BAXTER
United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

The Clerk has sent to the court for review an amended complaint[1] ("AC")

brought pursuant to 42 U.S.C. § 1983, filed by pro se plaintiff Ronald Robinson. (Dkt.

No. 13 ("Compl.")).  Plaintiff has also filed an application to proceed in forma pauperis

("IFP"), together with his Inmate Authorization Form.[2] (Dkt. No. 10, 11).

## I.    IFP Application

As to plaintiff's IFP application, the court finds that plaintiff has demonstrated

sufficient economic need, and he has filed the appropriate forms.  Therefore, plaintiff

has met the financial criteria for proceeding IFP.

---

[1] Plaintiff's case was originally filed in, and was transferred from, the Western District of New York. (Dkt. Nos. 1, 5).  On March 6, 2019, plaintiff filed a letter-motion to withdraw his action, which was granted in a Text Order by District Court Judge Mae A. D'Agostino. (Dkt. Nos. 4, 7).  However, on November 7, 2019, plaintiff requested that this case be reopened, claiming that another inmate filed the withdrawal request under plaintiff's name, but without his permission, due to a disagreement with plaintiff. (Dkt. No. 9).  Plaintiff claimed that he never filed a motion to withdraw.  Plaintiff also included an amended complaint with his motion for reopening.  Based on plaintiff's representation, Judge D'Agostino ordered that the case be reopened, and that the amended complaint be referred to me for initial review.

[2] Plaintiff is currently incarcerated.

However, in addition to determining whether plaintiffs meet the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i) -(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp*., 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).

## II.  Complaint

Most of plaintiff's AC involves facts that led to a state court conviction for which he is apparently still incarcerated.  Plaintiff's first cause of action is "False Imprisonment /False Arrest. (AC at 8).[3]  Plaintiff claims that in the fall of 2016, the Metro Jefferson County Drug Task Force ("DTF") illegally entered plaintiff's home. (*Id.*)  Plaintiff states that the members of the DTF sent a "known drug addict" ("the informant") to plaintiff's house in order to make a "controlled buy" from the plaintiff. (*Id.*)  Plaintiff's girlfriend answered the door, and the informant asked to speak with plaintiff.  However, when plaintiff refused to come to the door, the informant ran away from plaintiff's home, taking with her the DTF's "marked" money. (*Id.*)

Plaintiff appears to state that the DTF did not know that the informant had run away without making the purchase, and the DTF "made the illegal entry into the Plaintiff's house." (*Id.*)  Plaintiff states that after the DTF entered the house, plaintiff was told to empty his pockets, in order for law enforcement to recover the "marked" money from the controlled buy.  According to plaintiff, when defendant Detective Bickel did not find the money, he realized that the informant had taken it.  However, even though no marked money was found on plaintiff's person, the officers took plaintiff outside "to sit in a police vehicle." (Compl. at 9).  Plaintiff claims that they

---

[3] The pages of the AC are not numbered.  Therefore, the court will use the page numbers assigned by the court's electronic filing system ("CM/ECF").

held plaintiff against his will, while the DTF "ransacked" his house for "almost four hours." (*Id.*)

Plaintiff states that when the DTF failed to find anything, they "finally released the plaintiff" and left. (*Id.*) Plaintiff then states that, "in the statement of facts," the District Attorney stated that in the Fall of 2016, "the Metro Task force [sic] investigated the defendant, for the sale of illegal narcotics. That upon the Task force [sic] facilitating the undercover purchase of Heroin, from the Plaintiff, through a confidential informant, a search warrant was sought and executed upon the Plaintiff's home." (*Id.*) It is unclear to what "statement of facts" the plaintiff is referring. However, the court interprets this statement as alleging that, in one of the subsequent criminal proceedings, the District Attorney lied in writing about the success of the undercover purchase and about obtaining a search warrant before searching plaintiff's home. Plaintiff claims that no purchase was ever made, and that there was no record of a search warrant to enter plaintiff's home, and the District Attorney "went to the grand jury by way of a sealed indictment." (AC at 10).

Plaintiff's second cause of action is entitled "Excessive Force," "Fourth Amendment Claim by a Person at Liberty." (*Id.*) Plaintiff makes some conclusory statements about supervisors and individuals failing to follow the rules of their department, and then states that "there was NO legal grounds or reasoning for the excessive force deployed by the defendant[s], thereby clearly violating the Plaintiff's Constitutional rights, under this cause of action."[4] (*Id.*) However, there is no further

_____

[4] Plaintiff also states in this paragraph that, "where an officer violate's [sic] the rules of his department, the orders of a Supervisor, or does not follow his training, the Plaintiff must and is in this

4

description of what "force" was used or why plaintiff believed the "force" to be "excessive."

Plaintiff's third cause of action alleges "Conspiracy to Violate Civil Rights." (AC at 10-11). Plaintiff states that the defendants "acted on what they thought was lawful, but there [sic] were unlawful, which is the subject of the violation of the Plaintiff's rights as a conspiracy against him, in violation of the Plaintiff's Constitutional rights." (AC at 11).

Plaintiff's fourth cause of action alleges "Nondisclosure of Favorable Evidence." (AC at 11). Plaintiff states that during the grand jury proceedings, the "defendant"[5] Jefferson County District Attorney failed to "mention" that there was no warrant to search the plaintiff's home. Plaintiff appears to allege that this information was "exculpatory," and that it was the prosecutor's "duty" to present all exculpatory evidence to the grand jury. (*Id.*) Plaintiff claims that he is entitled to have the grand jury evaluate all of the evidence independently to determine whether criminal charges are warranted. (AC at 11-12). Plaintiff states that "in this case, the defendant misused the grand jury panel, . . . withheld evidence favorable to the Plaintiff . . . , [and] lied to the grand jury panel . . . ." (AC at 12). Plaintiff states that the conduct of the defendant was "to secure a conviction that was already illegal and unethical . . . ." (*Id.*)

---

case making the argument that such rules, orders and training are part of the totality of the circumstances, that bear on reasonableness." (AC at 10). This confusing statement adds nothing to the claim of excessive force. At best, plaintiff could be alleging that the defendants acted contrary to the rules of their department during the allegedly false arrest and illegal search.

[5] It is unclear to which "defendant" plaintiff is referring because he has named both the District Attorney ("DA") of Jefferson County - Kristyna S. Mills and an Assistant District Attorney ("ADA") - George Shaffer. Plaintiff does not specify which defendant committed the alleged illegalities.

Plaintiff's fifth cause of action is "Conflict of Interest." (*Id.*) Plaintiff claims that his defense attorney at trial, who plaintiff has also named as a defendant herein, had a conflict of interest because he also represented the informant. (*Id.*) Plaintiff claims that the trial judge asked plaintiff's attorney whether he represented the informant, and although counsel said "no," plaintiff claims that "[i]t is clear that this was not a truthful answer," because the "[i]nformant herself said as much . . . ." Plaintiff also claims that the Jefferson County Jail Log shows that his attorney came to visit both plaintiff and the informant, in violation of the "Rules of Professional Conduct," which is the basis for "this cause of action." (AC at 13). Plaintiff claims that the "sentencing court" committed serious error when it simply took counsel's word on this issue. (AC at 14).

Plaintiff's sixth and final cause of action is "Malicious Prosecution." (AC at 15). Plaintiff stated that the Jefferson County District Attorney knew that the case had many "severe" Constitutional violations, but tried to "hide" the errors, committed perjury, withheld favorable evidence, and mislead the grand jury, tainting its function. (*Id.*)

Plaintiff has attached Exhibit A to his amended complaint. (AC at 18-20). This exhibit consists of two pages of a decision by defendant County Court Judge Martusewicz, dated December 10, 2018 in response to a motion by plaintiff "seeking relief pursuant to Section 440.30 of the [New York] Criminal Procedure Law. (AC at 19). The exhibit also includes the first page of defendant ADA Shaffer's "Response to Discovery Demand."[6] (AC at 20). Plaintiff has underlined several sentences of this

---

[6] The court assumes that this document was the prosecutor's response to the plaintiff's criminal pretrial discovery demands.

document, some of which state as follows:

> All lab reports will be disclosed upon the People's receipt of same. All lab Rosario will be disclosed immediately prior to trial. There were no search warrants or medical records in this matter.

(AC at 20).

Plaintiff asks the "justice be dealt in favor of this Plaintiff." (AC at 15-16).

Plaintiff seeks one million dollars in damages for each cause of action. (AC at 6-7).

## III.    Judicial and Prosecutorial Immunity

### A.    Legal Standards

#### 1.    Judicial Immunity

With minor exceptions, judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions. *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991). Judicial immunity has been created for the public interest in having judges who are "at liberty to exercise their functions with independence and without fear of consequences." *Huminski v. Corsones*, 396 F.3d 53, 74 (2d Cir. 2004). Judicial immunity applies even when the judge is accused of acting maliciously or corruptly. *Imbler v. Pachtman*, 424 U.S. 409, 419 n.12 (1976) (citing *Pierson v. Ray*, 386 U.S. 547, 554 (1967)). Judicial immunity is immunity from suit, not just immunity from the assessment of damages. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The only two circumstances in which judicial immunity does not apply is when he or she takes action "outside" his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken "in absence of jurisdiction." *Mireles*, 502 U.S. at 11-12.

Injunctive relief against judges is also barred "unless a declaratory decree was

violated or declaratory relief was unavailable." *Bobrowski v. Yonkers Courthouse*, 777 F. Supp. 2d 692, 711 (S.D.N.Y. 2011) (citing inter alia *Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999) (per curiam)). Although fairness and injustice may result on occasion, a judicial officer must be free to act on his or her own convictions in exercising the authority vested in him or her, "without apprehension of personal consequences. . . ." *Id.* (citing inter alia *Mireles*, 502 U.S. at 10).

Whether an act by a judge is a "judicial one" relates to the "nature of the act itself" - whether it is a function that is necessarily performed by a judge. *Id.* (citing *Stump v. Sparkman*, 436 U.S. 349, 362 (1978)). The parties must have dealt with the judge in his or her "judicial capacity." *Id.* The court acts in "absence of all jurisdiction" when "it does not have any statutory or constitutional power to adjudicate the case." *Id.* (citing *Gross v. Rell*, 585 F.3d 72, 84 (2d Cir. 2009)). The judge will not be deprived of absolute immunity if he or she takes action that is merely "in excess" of his or her authority. *Id.* (citing *Mireles*, 502 U.S. at 12-13).

### 2. Prosecutorial Immunity

Prosecutors enjoy absolute immunity from suit under section 1983 in matters associated with their prosecutorial functions, regardless of motivation. *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) (prosecutorial immunity covers virtually all acts associated with the prosecutor's function, including conspiracies to present false evidence); *Bernard v. County of Suffolk*, 356 F.3d 495 (2d Cir. 2004) (absolute immunity shields prosecutors from suit pursuant to section 1983 for their alleged malicious or selective prosecution as well as for any misconduct in the presentation of evidence to the grand

jury).

Absolute immunity is defeated only when the prosecutor is engaging in investigative functions. *Bernard v. County of Suffolk*, 356 F.3d at 502-503 (citation omitted). The initiation and pursuit of prosecution, regardless of any alleged illegality, is protected by absolute prosecutorial immunity. *Peay v. Ajello*, 470 F.3d 65, 67-68 (2d Cir. 2006). It has also been held that a prosecutor is entitled to absolute immunity for his or her decision not to prosecute, regardless of the motivation for that decision. *Scloss v. Bouse*, 876 F.2d 287, 292 (2d Cir. 1989).

### B.    Application

### 1.    Judge Martusewicz

In this action, plaintiff has sued Kim Martusewicz, the County Court Judge who presided over plaintiff's criminal case. Based on the facts stated in the AC, plaintiff's only contact with defendant Martusewicz was in the judge's "judicial capacity," in connection with plaintiff's criminal action. The only claim that plaintiff appears to make against the judge is that he did not properly question defense counsel about the alleged "conflict of interest." Clearly, this was an action which occurred during, and was related to, plaintiff's criminal case. This was clearly a function performed by a judge. Thus, defendant Martusewicz is entitled to absolute immunity, regardless of how improperly plaintiff alleges that the judge behaved during the proceedings.[7] The AC must be dismissed as against Judge Martusewicz.

---

[7] The court notes that Exhibit A indicates that plaintiff plead guilty to the charges on May 30, 2017. (AC at 18).

### 2.     DA Mills/ADA Shaffer

Both DA Mills and ADA Shaffer are entitled to absolute immunity for the actions alleged by the plaintiff.  As stated above, it is unclear which defendant engaged in the alleged conduct because plaintiff's complaint is unclear.[8]  In any event, all the actions that plaintiff alleges were taken by either the ADA or DA were associated with the prosecution of plaintiff's state court criminal action.  Plaintiff claims that the defendants improperly obtained the indictment and misused the grand jury.  The law is clear that these defendants are entitled to absolute immunity even if they engaged in the conduct that plaintiff alleges.  Appearance before, and presentation of evidence to, the grand jury is part of the initiation of a criminal action. *See Cox v. City of New Rochelle*, No. 17-CV-819, 2019 WL 3778735, at *11 (S.D.N.Y. Aug. 10, 2019) (citing cases). Thus, even if plaintiff alleges that the prosecutor lied to the grand jury, or did not present appropriate evidence to the grand jury (favorable or otherwise), he or she would be entitled to absolute immunity.  As stated above, even the decision whether to prosecute *regardless of the motivation for that decision*, is protected by absolute immunity. *Scloss v. Bouse*, 876 F.2d at 292.  There is no allegation that the prosecutors were engaging in "investigative" functions, and thus, they would both be entitled to absolute immunity, and the complaint may be dismissed in its entirety as against defendants Mills and Shaffer.

---

[8] To the extent that plaintiff is suing DA Mills because she is ADA Shaffer's "supervisor," plaintiff's claim would also fail because personal involvement is required for liability in a section 1983 action, and "respondeat superior" is not an appropriate basis for liability. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003). *See also McClinton v. Popdan*, No. 18-CV-5937, 2019 WL 1748604, at *4 (E.D.N.Y. Apr. 17, 2019) (dismissing claims against the DA based on the failure to allege personal involvement).

III.   *Heck v. Humphrey*

A.   **Legal Standards**

Civil lawsuits may not be used to collaterally attack criminal convictions. *Heck v. Humphrey*, 512 U.S. 477 (1994).  In *Heck*, the Supreme Court held that a section 1983 action seeking damages is not cognizable if a decision in favor of the plaintiff would necessarily invalidate a criminal conviction, unless the conviction or sentence had been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal habeas court. *Id.* at 486-87.

B.   **Application**

In this case, plaintiff has several causes of action, some of which relate directly to his criminal conviction.  Plaintiff is clearly still incarcerated as a result of that conviction.  In fact, in the portion of the County Court judge's decision on plaintiff's section 440.30 motion to vacate, the judge states that as of December 2018, plaintiff's direct appeal may still have been pending. (Pl.'s Ex. A, AC at 19).[9]  As stated above, the DA and the ADA would have absolute immunity for any actions that they took in connection with the prosecution of plaintiff's criminal case.  In addition, to the extent that the decision on any one of plaintiff's causes of action would necessarily invalidate the criminal conviction, the claims would be barred by *Heck.*

The claims barred by *Heck* would include plaintiff's fourth cause of action, alleging that the DA or ADA failed to provide the grand jury with evidence "favorable"

---

[9] The judge stated that "A notice of appeal was filed by trial counsel, John Hallett, Jr., on June 26, 2017.  As of the date of this decision [Dec. 19, 2108], this Court is unaware whether or not the defendant has perfected his appeal." (Pl.'s Ex. A, AC at 19).

to the accused in order to "secure" a conviction; plaintiff's fifth cause of action, claiming that his attorney had a conflict of interest because he also represented the "confidential informant" in the case, even though he denied doing so; and plaintiff's sixth cause of action, alleging malicious prosecution.[10]  Thus, each of those causes of action may also be dismissed pursuant to *Heck*.

In addition, to the extent that plaintiff seeks to sue his trial attorney for damages due to an alleged a "conflict of interest," plaintiff may not do so under section 1983, even if the claim were not barred by *Heck*.  It is well settled that an attorney performing the traditional functions of defense counsel is not acting under color of state law, an essential element of a Section 1983 claim. *McKiver v. City of New York*, No. 17 Civ. 4411, 2018 WL 3628840, at *4 (S.D.N.Y. July 23, 2018) (citing inter alia *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981)). *See also Grant v. Seidler*, No. 19-CV-5323, 2019 WL 5807122, at *4 (S.D.N.Y. Nov. 5, 2019) (defense counsel does not act under color of state law).

In this case, the allegations against plaintiff's attorney relate only to his function as defense counsel in the plaintiff's criminal action.  Thus, defendant Hallett did not act under color of state law for purposes of section 1983, regardless of whether he violated any codes of professional responsibility, and plaintiff's claims against defendant Hallett may be dismissed based on *Heck* and based on counsel's failure to act under color of

---

[10] Malicious prosecution has four elements. *Bermudez v. City of New York*, 790 F.3d 368, 377 (2d Cir. 2015).  The defendants must have commenced or continued a criminal proceeding against the plaintiff, the proceeding terminated in the plaintiff's favor, there was no probable cause for the criminal proceeding, and the proceeding was instituted with "actual malice." *Id.* (citations omitted).  In this case, plaintiff has not alleged, inter alia, that his criminal action was terminated in his favor.  In fact, it appears that plaintiff plead guilty to the charges, and his direct appeal may still be pending.

state law.

## IV.  Conspiracy

### A.  Legal Standards

In order to state a claim for conspiracy under section 1983, plaintiff must allege "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello v. County of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002) (citing *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir.1999)).  "'[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct.'" *Id.* at 325 (quoting *Dwares v. City of N.Y.*, 985 F.2d 94, 100 (2d Cir.1993) (citations, internal quotation marks, and internal alterations omitted)).

### B.  Application

Plaintiff's third cause of action is for "Conspiracies to Violate Civil Rights . . . ." (AC at 10).  In this cause of action, plaintiff purports to define "conspiracy," and then states that the "defendants acted on what they thought was lawful, but [their] actions were unlawful, which is the subject of the violation of the Plaintiff's rights as a conspiracy against him . . . ." (*Id.*)  This sentence is more than conclusory, it is incomprehensible.  Plaintiff has named several defendants, and he does not allege which defendants "conspired," nor has he alleged how they conspired to violate his

13

civil rights.  In fact, to the extent that plaintiff's sentence is understandable, it appears that plaintiff claims that the defendants believed what they were doing was "lawful," even though it turned out to be unlawful.  This statement does not even approach the elements of a conspiracy to violate civil rights.  The only "private" defendant is plaintiff's attorney, and there is no indication that he "conspired" with any of the state defendants to violate plaintiff's constitutional rights.[11]  Thus, to the extent that plaintiff's amended complaint alleges "conspiracy" to violate plaintiff's civil rights, it may be dismissed.

## V.     False Arrest, False Imprisonment, and Excessive Force

### A.     Legal Standards

A section 1983 claim for false arrest is essentially the same as a claim for false arrest under New York law. *Weyant v. Okst* 101 F.3d 845, 852 (2d Cir. 1996).  The New York State standard for false arrest requires that: "'(1) the defendants intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged.'" *Sethi v. Nassau County*, No. 11-CV-6380, 2014 WL 2526620, at *3 (E.D.N.Y. June 3, 2014) (quoting *Jocks v. Tavernier*, 316 F.3d 128, 134-35 (2d Cir. 2003)).

False arrest is a "species" of false imprisonment, so both claims are subject to the

---

[11] A properly stated "conspiracy" claim between private counsel and a state actor could render counsel liable under section 1983. *Grant, supra* at *2 (citations omitted).  However, it is unclear that plaintiff intends to claim a "conspiracy" with respect to counsel, as his "conspiracy" cause of action precedes plaintiff's claim against his attorney.  In any event, plaintiff's vague allegation that counsel lied to the judge about representing the confidential informant does not in any way allege a "conspiracy" with the judge, nor does plaintiff specifically make this allegation.

same analysis. *Greene v. City of New York*, No. 15-CV-6436, 2019 WL 3606739, at *10 (E.D.N.Y. Aug. 6, 2019) (quoting *Hargroves v. City of New York*, 411 F. App'x 378, 382 n.3 (2d Cir. 2011)). When there has been no "formal arrest," the plaintiff must establish that the police officer, "'by means of physical force or show of authority, terminate[d] or restrain[ed] his freedom of movement.'" *Id.* (quoting *Brendlin v. California*, 551 U.S. 249, 254 (2007) (alterations in original)). In making this determination, the court must consider whether, "'in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" *Id.* (quoting *Brendlin*, 551 U.S. at 255 (citation and quotation marks omitted)).

Although plaintiff also claims that he was the subject of "excessive force," he makes absolutely no claims of physical force being used during the search. There have been claims in which plaintiffs argued that the defendant officers acted with excessive force by virtue of the number of officers or the amount of weaponry used during the search. *See e.g. Carpenter v. Shulman*, No. 18-2152-cv, __ F. App'x __, 2019 WL 5588849, at *2 (2d Cir. Oct. 30, 2019) (discussing cases in which plaintiffs were associating "excessive force" with the number of officers used during the search in the context of affording defendants qualified immunity).

## B.    Application

### 1.    Excessive Force

The court would first point out that claims of excessive force would not necessarily be barred by *Heck*. Officers could use excessive force during a valid arrest,

and therefore, a decision in the plaintiff's favor would not necessarily affect the validity of the conviction. Thus, the court will proceed to consider whether plaintiff states a claim for excessive force in his amended complaint.

Plaintiff only names two law enforcement officers, defendants Golden and Bickel, who were involved with the DTF. Other than alleging that his house was "ransacked" for four hours, and he was kept in a police car during that time, plaintiff makes no other allegation of "excessive force" by either one of these defendants. In the "Excessive Force" cause of action, plaintiff cites "*Graham*," and the court assumes that plaintiff is referring to *Graham v. Connor*, 490 U.S. 386 (1989), in which the Supreme Court held that claims of excessive force during any form of "seizure" should be analyzed under the Fourth Amendment standard of reasonableness, rather than under a substantive due process standard. *Id.* at 393-95. *Graham* specifically dealt with excessive physical force, which plaintiff does not allege in this case. As written, plaintiff's cause of action for excessive force does not state a claim.

## 2. False Arrest/Imprisonment

There was no "formal" arrest in this case, and according to the attached portion of Judge Martusewicz's section 440.30 decision, "the defendant was not arrested at the time of the search, but rather was later indicted by way of a sealed indictment." (AC at 19). It thus, possible that plaintiff's alleged "false imprisonment" could be addressed without fear of the result invalidating plaintiff's conviction. Therefore, the cause of action would not be barred by *Heck*. Plaintiff claims that the officers had no warrant and no probable cause to enter his home or keep him confined in a police car while they

searched his home for four hours.  While Judge Martusewicz's decision states that "[u]pon the [DTF] facilitating the undercover purchase of heroin from the defendant through a confidential informant, a search warrant was sought and executed upon the defendant's residence." (AC at 19).  Plaintiff appears to dispute these facts.

Initial review of a complaint is not the appropriate time to delve into disputed facts, and therefore, the court must allow this claim to go forward against only defendants Golden and Bickel.  There is no indication in plaintiff's AC that any of the other defendants were involved in the search of his residence or that plaintiff makes claims against any defendants other than those responsible for the search in this cause of action.

## VI. **Opportunity to Amend**

### A. **Legal Standards**

Generally, when the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).  In this case, the court finds that any attempt by the plaintiff to amend some of the claims in this complaint would be futile, but finds that he should be allowed to amend others as discussed herein.

### B. **Application**

The claims against both defendant Mills and defendant Shaffer may be dismissed with prejudice based on prosecutorial immunity to the extent that plaintiff challenges any decisions or actions by the district attorneys relating to the prosecution of

plaintiff's criminal case. In addition, the claims against defendant Judge Martusewicz must also be dismissed with prejudice based on judicial immunity. Thus, plaintiff need not be allowed to amend his complaint with respect to these defendants because any attempt to amend would be futile. Plaintiff's claims against his defense attorney may be dismissed without prejudice, but without leave to amend because plaintiff's counsel does not act under color of state law, and the court is without jurisdiction to consider any claims against him.[12]

The court will also recommend dismissing plaintiff's claims of excessive force without prejudice and with an opportunity to amend if there was some "force" to which he was subjected that was "excessive," distinguished from his claims of unreasonable search and false imprisonment. If this court adopts my recommendation, plaintiff's claim of false arrest/imprisonment may go forward, but only against defendants Golden and Bickel. However, any service of the complaint on these defendants should await the District Judge's review of my recommendation and any second amended complaint filed by plaintiff within the time specified by the District Court judge's order.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 10) is

**GRANTED**,[13] and it is

---

[12] Because this court is recommending dismissal for want of jurisdiction as against defense counsel, this does not preclude plaintiff from suing counsel in another forum, if one exists, or from bringing any claims of malpractice, if appropriate in state court. However, plaintiff may not pursue his claims against counsel in federal court under section 1983.

[13] Although his IFP application has been granted, plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

**ORDERED**, that the Clerk shall provide the superintendent of the prison facility in which plaintiff is currently confined with a copy of plaintiff's inmate authorization form (Dkt. No. 11), and notify the official that this action has been filed and that plaintiff is required to pay the entire statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915;[14] and it is further

**ORDERED**, that the Clerk shall provide a copy of plaintiff's inmate authorization form (Dkt. No. 11) to the Financial Deputy of the Clerk's Office; and it is

**RECOMMENDED**, that the amended complaint be **DISMISSED IN ITS ENTIRETY WITH PREJUDICE PURSUANT TO 28 U.S.C. § 1915(e)(2)(B)(iii) AS AGAINST DEFENDANTS MILLS, SHAFFER, and MARTUSEWICZ**, and it is

**RECOMMENDED**, that the amended complaint is **DISMISSED IN ITS ENTIRETY WITHOUT PREJUDICE FOR LACK OF JURISDICTION AS AGAINST DEFENDANT HALLETT**, but without the opportunity to amend, and it is

**RECOMMENDED**, that plaintiff's cause of action for **Excessive Force** be **DISMISSED WITHOUT PREJUDICE PURSUANT TO 28 U.S.C. § 1915(e)(2) (B)(ii),** with the opportunity to amend, as against the remaining defendants **Golden and Bickel**, and it is

**RECOMMENDED**, that plaintiff's claims for false imprisonment/arrest go

---

[14] While Section 1915 permits indigent inmates to commence a civil action in federal court without prepayment of the filing fee, those litigants "must subsequently pay the fee, to the extent [they are] able to do so, through periodic withdrawals from [their] inmate accounts." *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010) (citing 28 U.S.C. § 1915(b); *Harris v. City of N.Y.*, 607 F.3d 18, 21 (2d Cir. 2010)).

19

forward as to defendants **Golden and Bickel**, and it is

**RECOMMENDED**, that if the court adopts this recommendation, plaintiff be afforded thirty (30) days to amend his complaint only as to his claim of **Excessive Force**,[15] and it is

**RECOMMENDED**, that upon the expiration of thirty (30) days or any period of time extended by the District Court, the case be returned to me for further review, either accompanied by a proposed second amended complaint for this court's initial review, or for service of the original AC on defendants Golden and Bickel if plaintiff does not file a proposed amended complaint with respect to his claim of excessive force, and it is

**ORDERED**, that all pleadings, motions, and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. Plaintiff must comply with all requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with rule 7.1 of the Local Rules of Practice for the Northern District of New York in filing motions; motions will be decided on submitted papers, without oral argument, unless otherwise ordered by this Court. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; his failure to do so may result in the dismissal of this action**; and it is

---

[15] If plaintiff files a second amended complaint, it must be a complete pleading which will supercede the amended complaint, but which may include only the original false arrest/imprisonment claims against defendants Golden and Bickel, together with any proposed amended excessive force claims against these defendants, if appropriate.

**ORDERED**, that the Clerk serve a copy of this Order and Report-Recommendation on plaintiff by regular mail.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72

Dated: November 20, 2019

Hon. Andrew T. Baxter
U.S. Magistrate Judge