**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

─────────────────────────────────────────

RONALD ROBINSON,

                                    **Plaintiff,**

     vs.                                         **5:19-cv-406**
                                                  **(MAD/ATB)**

DETECTIVE GOLDEN, *ID #19*; and
DETECTIVE BICKEL,

                              **Defendants.**

─────────────────────────────────────────

**APPEARANCES:**                           **OF COUNSEL:**

**RONALD ROBINSON**
101 Benedict Avenue
Syracuse, New York 13210
Plaintiff, *pro se*

**SUGARMAN LAW FIRM LLP**          **PAUL V. MULLIN, ESQ.**
211 West Jefferson Street
Syracuse, New York 13202
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

      Plaintiff *pro se* Ronald Robinson commenced this action pursuant to 42 U.S.C. § 1983

("Section 1983") on February 4, 2019, seeking monetary relief for alleged violations of his civil

rights. *See* Dkt. No. 1. The action was transferred from the Western District of New York to this

Court. *See* Dkt. No. 5. Subsequently, Plaintiff filed an amended complaint which was referred to

Magistrate Judge Baxter for review. *See* Dkt. No. 13. Magistrate Judge Baxter recommended the

dismissal of the majority of Plaintiff's causes of action, leaving only a single cause of action for

false arrest under the Fourth Amendment against Defendants Golden and Bickel. *See* Dkt. No.

15. On March 13, 2020, this Court adopted Magistrate Judge Baxter's Report-Recommendation

and Order in its entirety. *See* Dkt. No. 17.

Currently before the Court is Defendants' motion for summary judgment. *See* Dkt. No. 51. Plaintiff has not submitted any opposition to the motion. For the reasons that follow, Defendants' motion is granted.

## II. BACKGROUND

At all times relevant to this action, Plaintiff was living in an apartment on Gotham Street in Watertown, New York. *See* Dkt. No. 51-6 at 6. Defendants Golden and Bickel were employed by the County of Jefferson and City of Watertown, respectively, as Detectives. *See* Dkt. No 51-13 at ¶ 1; Dkt. No. 51-14 at ¶ 1. Both Defendants were also members of the Metro Jefferson Drug Task Force ("Task Force"). On November 3, 2016, another member of the Task Force, Detective Dawley, made an application for a search warrant under CPL § 690.35 for Plaintiff's Gotham Street apartment. *See* Dkt. No. 51-7. Detective Dawley described the character of the property sought by the application as a controlled substance that was unlawful to possess, *see id.* at 1, and supported the search warrant application with his own statement and a statement from a confidential informant ("CI"), *see* Dkt. Nos. 51-8, 51-9.

In his supporting statement, Detective Dawley asserted that he received a phone call from the CI informing him that she had been contacted by Plaintiff. *See* Dkt. No. 51-8 at 1. The CI stated that Plaintiff said that "he had just gotten back from Syracuse with 'work'" and asked her to come see him at the Gotham Street apartment. *Id.* A "short time later," Detective Dawley asserted that the CI called him again to report that she was in Plaintiff's apartment at the Gotham Street address and observed "heroin on a plate, crack[,] and powder cocaine ... currently being separated into foil wraps." *Id.* Detective Dawley asserted that he was familiar with Plaintiff due to arresting him in the past for possession of narcotics and because Plaintiff had been the target of

2

recent drug purchases using a CI.  *See id.*  Detective Dawley also claimed that he had worked

with this CI recently, and the information she had provided "was accurate and true" and allowed

him to successfully execute a search warrant.  *Id.*

In her supporting statement, the CI claimed that Plaintiff had called her that morning

(November 3, 2015) and "asked if [she] could come over and hang out and ... he had just gotten

back from Syracuse with work."  Dkt. No. 51-9 at 1.  The CI stated that she then called Detective

Dawley and went to Plaintiff's apartment on Gotham Street.  *See id.*  The CI asserts that she was

let into the apartment and saw Plaintiff, as well as a third party with "what looked like dope on a

plate using a straw to put it into foil wrappers."  *Id.*  The CI stated that Plaintiff "told [her that] he

was now getting the dope in grams now and it was fire and he also had hard and soft," and that

she saw "a couple grams" of "crack and cocaine on the living room table in sandwich bags."  *Id.*

The CI claimed that the "crack was in about 4 hard balls waiting to be broken off as people want

it" and that she had seen Plaintiff and a third party "deal before maybe in the hundreds of times

and this is the way they always do it."  *Id.*  The CI claimed to have known Plaintiff "for about 4

months" and knew him "to be dealing heroin, crack[,] and cocaine in Watertown."  *Id.* at 2.

A City of Watertown Judge signed Detective Dawley's search warrant application that

same day.  *See* Dkt. No. 51-10.  The warrant directed any member of the Watertown City Police,

Jefferson County Sheriff, New York State Police, or the Task Force to search Plaintiff's Gotham

Street apartment as well as "any and all persons located thereat during the time of the execution of

this Warrant."  *Id.* at 1.  The warrant also authorized the authorities "to execute said search

warrant without giving notice of your authority or purpose, based upon the reasons denoted in the

attached search warrant application."  *Id.*

The search warrant was executed by members of the Task Force, including Defendants, at

about 3:05 PM on November 3, 2016. *See* Dkt. Nos. 51-11, 51-12. Four people in the apartment, including Plaintiff, were secured "without incident." Dkt. No. 51-11 at 1. Officers spoke with Plaintiff for about fifteen-to-twenty minutes, and then removed Plaintiff from the apartment and placed him in an officer's vehicle outside. *See* Dkt. No. 51-6 at 23. Officers located "a foil wrapper that contained an orange powder" and "a clear plastic bag that contained an off white substance," but both returned "inconclusive" results at the scene when tested for the presence of illicit substances. Dkt. No. 51-11 at 1-2. Both substances were sent to a lab for further testing. *Id.* at 2. Approximately $1,000 in cash was found and ultimately returned to the occupants of the apartment. *See id.* at 1; Dkt. No. 51-6 at 34. Plaintiff remained in the officer's vehicle for approximately three hours, and was released after the search concluded. *See* Dkt. No. 51-6 at 26, 33. He was not arrested at that time.[1]

Notably, Plaintiff's account of his interaction with the CI differs significantly from the statements in support of the search warrant application. Plaintiff testified that the CI "showed up to the house ... talking about [how] she had $100 that she wanted to spend and why couldn't she stay around me and come in out the cold." Dkt. No. 51-6 at 16. Plaintiff understood her to be wanting to buy drugs and asserts that "she was made to leave the residence, her and her money." *Id.* at 17. During the subsequent search of his apartment Plaintiff claims that he overheard Defendant Golden "say that the [CI] got away with his money; she ran off with his money." *Id.* at 20.

Defendants now argue that they are entitled to summary judgment on Plaintiff's false arrest claim because Defendants detained Plaintiff while executing a valid warrant and "'[a]n

---

[1] Plaintiff was subsequently arrested on November 27, 2016, and December 1, 2016, on charges unconnected to the facts at issue in this case. *See* Dkt. No. 51-6 at 5-6.

arrest pursuant to a valid warrant is presumptively made with probable cause.'"  Dkt. No. 51-16 at

7 (quotation omitted).  Defendant asserts that this presumption of probable cause may only be

rebutted by "a showing of fraud, perjury, or the misrepresentation or falsification of evidence in

obtaining the warrant," which Plaintiff has failed to do.  *Id.* at 8.

### III. DISCUSSION

**A.    Standard of Review**

 A court may grant a motion for summary judgment only if it determines that there is no

genuine issue of material fact to be tried and that the facts as to which there is no such issue

warrant judgment for the movant as a matter of law.  *See Chambers v. TRM Copy Ctrs. Corp.*, 43

F.3d 29, 36 (2d Cir. 1994) (citations omitted).  When analyzing a summary judgment motion, the

court "'cannot try issues of fact; it can only determine whether there are issues to be tried.'"  *Id.* at

36-37 (quotation and other citation omitted).  Moreover, it is well-settled that a party opposing a

motion for summary judgment may not simply rely on the assertions in its pleadings.  *See Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

 In assessing the record to determine whether any such issues of material fact exist, the

court is required to resolve all ambiguities and draw all reasonable inferences in favor of the

nonmoving party.  *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 255 (1986)) (other citations omitted).  Where the non-movant either does not respond to the

motion or fails to dispute the movant's statement of material facts, the court may not rely solely

on the moving party's Rule 56.1 statement; rather the court must be satisfied that the citations to

evidence in the record support the movant's assertions.  *See Giannullo v. City of New York*, 322

F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the

motion for summary judgment "would derogate the truth-finding functions of the judicial process

by substituting convenience for facts").

"'Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.'" *Jeffreys v. City of New York*, 426 F.3d 549, 553-54 (2d Cir. 2005) (quotation omitted).  "However, '[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'" *Id.* (quoting *Anderson*, 477 U.S. at 252).  "To defeat summary judgment, therefore, nonmoving parties 'must do more than simply show that there is some metaphysical doubt as to the material facts,' ... and they 'may not rely on conclusory allegations or unsubstantiated speculation.'" *Id.* (quotations omitted).

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).  The Second Circuit has directed that the court is obligated to "'make reasonable allowances to protect *pro se* litigants'" from inadvertently forfeiting legal rights merely because they lack a legal education.  *Govan*, 289 F. Supp. 2d at 295 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).  "This liberal standard, however, does not excuse a *pro se* litigant from following the procedural formalities of summary judgment." *Id.* (citation omitted).  Specifically, "a *pro se* party's 'bald assertion,' completely unsupported by evidence is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (citing *Cary v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

**B.    False Arrest**

"To prevail on a claim of false arrest under New York law, the plaintiff must show that:

6

(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Wright v. Musanti*, 887 F.3d 577, 587 (2d Cir. 2018) (citing *Broughton v. New York*, 37 N.Y.2d 451, 456 (1975)).  Defendants concede the first three elements of the claim.  However, "[a]n arrest of a criminal suspect by a law enforcement officer with probable cause is a 'privileged' confinement even if it is non-consensual." *McKay v. City of New York*, 32 F. Supp. 3d 499, 505 (S.D.N.Y. 2014).  Thus, "'[t]he existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983.'" *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)).  "The burden of establishing the absence of probable cause rests on the plaintiff." *Nelson v. Hernandez*, 524 F. Supp. 2d 212, 220 (E.D.N.Y. 2007) (citing *Brown v. City of New York*, 306 F. Supp. 2d 473, 479 (S.D.N.Y. 2004)).

"'In general, probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" *Gonzalez,* 728 F.3d at 155 (quoting *Weyant*, 101 F.3d at 852) (emphasis omitted).  "The inquiry is limited to 'whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest.'" *Id.* (quoting *Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir. 2006)).  "Where the plaintiff was arrested pursuant to a warrant issued by a neutral magistrate ... we presume that probable cause existed." *Rhodes v. United States*, 519 Fed. Appx 703, 705 (2d Cir. 2013) (citing *Walczyk v. Rio*, 496 F.3d 139, 155-56 (2d Cir. 2007)).  A plaintiff "may rebut this presumption only by showing that 'the officer submitting the probable

cause affidavit knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit or omitted material information, and that such false or omitted information was necessary to the finding of probable cause.'" *Id.* (quoting *Soares v. Connecticut*, 8 F.3d 917, 920 (2d Cir. 1993) (internal quotation marks omitted).

Here, there has been no showing of fraud, perjury, or other actions by the submitting officer, Detective Dawley, that could rebut the presumption that Plaintiff's arrest pursuant to the warrant was made with probable cause—even assuming, as Plaintiff seems to argue, that the CI lied both to Detective Dawley and in her supporting statement.  "The rule in this circuit is that as long as the applicant for the warrant accurately represents the information provided by an informant, probable cause is not defeated because the informant erred, or even lied, in his description of events." *United States v. Smith*, 9 F.3d 1007, 1014 (2d Cir. 1993); *see also United States v. Canfield*, 212 F.3d 713, 720 (2d Cir. 2000).  Here, Plaintiff does not allege that Detective Dawley inaccurately represented the information provided to him by the CI, and there is no evidence in the record to suggest that Detective Dawley had any reason to believe that the CI was being untruthful.  Detective Dawley had arrested Plaintiff in the past for possession of narcotics, Plaintiff had recently been the target of other drug purchases using a CI, and this CI had previously given Detective Dawley accurate and true information that allowed him to successfully execute a search warrant. *See* Dkt. No. 51-8 at 1.  Indeed, Defendant Golden's statement during the search that the CI "ran off with his money" suggests that officers believed, prior to the search, that the CI's statements were truthful.  Dkt. No. 51-6 at 20.

Accordingly, the Court grants Defendants' motion for summary judgment.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the

applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion for summary judgment (Dkt. No. 51) is **GRANTED**;

and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close

this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision

and Order on the parties in accordance in the Local Rules.

**IT IS SO ORDERED.**

Dated:  April 26, 2022
       Albany, New York

Mae A. D'Agostino
U.S. District Judge